Joe **BOUGENO**, Plaintiff-Appellant,

v.

Terry **THOMPSON**, Defendant-Respondent.

No. 58231.

Supreme Court of Missouri,
En Banc.

Oct. 8, 1973.

Samuel A. Goldblatt, Fox, Goldblatt & Singer, Inc., St. Louis, for plaintiff-appellant.

Burton H. Shostak, Kramer, Chused, Kramer, Shostak & Kohn, St. Louis, for plaintiff-appellant on the appeal.

Fred B. Whalen, Whalen, O'Connor, Collins & Danis, St. Louis, for defendant-respondent.

HENLEY, Judge.

This is an action for damages for injury to plaintiff and his automobile arising out of a collision with defendant's automobile at the intersection of two streets in St.

Louis county. Trial to a jury resulted in a verdict and judgment for plaintiff for $5500. The trial court granted defendant a new trial because it had given an erroneously modified MAI[1] instruction and plaintiff appealed to the Missouri Court of Appeals, St. Louis District. That court affirmed the order of the trial court, but not for the same reason. On application of plaintiff, we ordered the case transferred here and consider and decide it as if the original appeal had been direct to this court. Mo.Const. Art. V, § 10, V.A.M.S.

The case was submitted to the jury on both primary and humanitarian negligence. The humanitarian verdict directing instruction given by the court was MAI 17.15 which submitted that defendant could have avoided injury to plaintiff by either swerving or stopping, except that the approved instruction had been modified by adding to the word "swerving" the words "to the right." Thus, the instruction told the jury that it could find for plaintiff if it believed, among other things, that defendant could have avoided the collision by either swerving *to the right* or stopping, but negligently failed to do so. The issue presented is whether the addition of the italicized words was a necessary modification of the approved instruction and, therefore, permissible, or an impermissible deviation therefrom and, therefore, error presumptively prejudicial. Rule 70.01.[2] We affirm, holding that the modification was unnecessary and an impermissible deviation from the approved instruction.

The collision occurred Saturday, March 16, 1968, shortly after 11 a. m., in the northwest quadrant of the intersection of Bentley Manor Drive and Centurion Drive, an uncontrolled right-angle intersection in a residential area of St. Louis county. The day was clear, visibility good, and the streets dry. Bentley Manor, a concrete street, runs north and south. It is 28 feet wide from curb to curb with two 14 foot lanes for travel. Centurion, also of concrete and 28 feet wide, runs east-west. Centurion is level east of Bentley. Bentley is slightly up-grade from south to north until it levels off at a point a few feet south of the intersection. The intersection is level. The speed limit on both streets is 25 miles per hour.

At the time of the collision, plaintiff was en route from his home to visit a friend. He was driving his Valiant automobile and his route took him west on Centurion toward Bentley. At approximately one block east of the intersection, his speed was 25 miles per hour. By the time he reached a point about 30 feet east of the intersection he had reduced his speed to 20 miles per hour. Because of the level of the terrain south of Centurion and east of Bentley, a motorist traveling west on Centurion can see very little of Bentley until he reaches a point approximately 45 feet east of the intersection. At this point and again at a point 30 feet east of the crossing, a westbound motorist can see vehicles on Bentley as much as 50 or 60 feet south of the intersection.

Plaintiff testified that he first saw defendant's automobile when he (plaintiff) was approximately one to two car lengths (which he estimated at 15 to 30 feet) east of the intersection; that at that time defendant was about 60 feet south of the intersection, had applied his brakes, had swerved to his left, and was skidding toward the northwest corner of the intersection; that he (plaintiff) was then traveling in the north or westbound lane of Centurion; that he applied his brakes, swerved right, and skidded toward the point of collision in the northwest quadrant of the intersection; that at impact he had slowed to 5 miles per hour; that the collision occurred west of but "close to" the center line of Bentley and north of the center line of Centurion when the front of his automobile was about four feet into the north-

---

1. Missouri Approved Jury Instructions, second edition.

2. References to rules are to Missouri Supreme Court Rules and V.A.M.R.

west quadrant; that defendant's automobile struck the left side of his automobile at a point near and below his "vent window," but that he does not know what part of defendant's automobile struck his.

Plaintiff further testified that there were no "* * * vehicles, or [other] * * * type of physical obstruction * * * in that intersection * * *" and therefore there was "room for [defendant] to swerve to the right * * *" instead of to the left.

Skid marks 24 feet long made by the front wheels of plaintiff's automobile began at a point approximately 10 feet east of the east line of Bentley and ran west and northwest into the intersection. Skid marks 62 feet long made by the front wheels of defendant's automobile began in the east lane of Bentley at a point approximately 40 feet south of the south line of Centurion and ran in a straight line north and northwest into the northwest quadrant of the intersection.

Defendant had left his sister's home located on Bentley one block south of Centurion and was driving his Chevrolet automobile north, en route to his home at the time of the accident. He testified that just before he saw plaintiff he (defendant) was traveling north at 25 miles per hour in the east or curb-lane of Bentley with the right side of his automobile about 1 or 2 feet "from the curb" and its left side 3 or 4 feet from the center of the street; that he first saw plaintiff when he (defendant) was approximately 60 feet south of the intersection and plaintiff was east of the intersection traveling west; that he "hit [his] brakes" and swerved left as soon as he saw plaintiff's automobile; that he kept his brakes applied until the vehicles collided and his automobile skidded or slid forward in a north-northwest path from the moment his brakes took hold; that his swerve to the left was made to try to get away from plaintiff who was approaching the intersection from his right; that as the front of his Chevrolet crossed over into the intersection, plaintiff was still back east of the intersection "just a little bit" and was slowing down; that as plaintiff entered the intersection he slowed more and "just before the collision, he [plaintiff] swerved to the right;" that the collision occurred in the northwest quadrant of the intersection, close to the center line of Bentley; that the "right corner" of his front bumper struck the left side of plaintiff's automobile; that when the vehicles stopped after the impact, the left end of his front bumper extended one or two feet across the center line into the west lane of Bentley.

Defendant further testified that the only vehicles in or near the intersection immediately before or at the time of the collision were his Chevrolet and plaintiff's Valiant; that had he stayed in the east lane he "* * * would have hit [plaintiff's] rear end * * *" and had he swerved or turned right into Centurion, he "* * * would have hit [plaintiff] head-on going around the corner"; that he had swerved left and was skidding in a northwestwardly path and once he got into the intersection, he did not then "* * * have room to stop [the northwestwardly skid] and turn [toward the east]."

The parties agree in their briefs that defendant swerved to his *left*. The evidence supports that agreement and it is obvious that it would support a finding that he so swerved as soon as he knew or could have known of plaintiff's position of immediate danger. Plaintiff contends that under the facts in this case, modification of MAI 17.-15 was necessary if the instruction was to present fairly his theory of the case: that defendant should have swerved to the right instead of to the left and was negligent in failing to do so. In this connection, plaintiff asserts that the modification made complied in all respects with the guidelines for modification prescribed by Rule 70.-01(e) and he argues that for these reasons the court erred in granting defendant a new trial on the ground that the giving of this instruction was prejudicial error.

Defendant contends that MAI 17.15, as approved, was applicable to the facts of this case, that it did not require modification, and that Rule 70.01(b) mandated that it be given to the exclusion of any other. Defendant contends also that the modification by addition of the italicized words was not only not necessary to submit the issues fairly, but that it resulted in an unfair and not impartial submission, and invaded the province of the jury.

This court said in Brown v. St. Louis Public Service Co., 421 S.W.2d 255, 259[3] (banc 1967), that " * * * where there is deviation from an applicable MAI instruction which does not need modification under the facts in the particular case, prejudicial error will be presumed unless it is made perfectly clear by the proponent of the instruction that no prejudice could have resulted from such deviation." Obviously MAI 17.15 is an instruction applicable to this case and admittedly the instruction given deviated therefrom by adding the words "to the right." Plaintiff does not attempt to demonstrate that no prejudice could have resulted from the deviation. Instead, he confines himself to an effort to show that the applicable instruction needed modification if it was to submit fairly the issues under the facts in this case. His position is that the issues are whether defendant could have avoided the collision by swerving to the right instead of to the left and negligently failed to do so; not whether he could have avoided the collision by swerving in either direction, as MAI 17.15 would have submitted the issues. He argues that since the evidence is that defendant did swerve to the left, the instruction required modification, because, without modification, defendant could argue to the jury that all the instruction required was that he swerve, that he did swerve and, therefore, he had done all the judge said the law required of him.

We recognize that such an argument could be effective. We recognize too, defendant's suggestion that under the instruction, as modified, an argument by plaintiff could be effective, which implied that since the instruction speaks only of avoiding the collision by swerving to the right, the judge has in effect said to the jury that a swerve to the left in this case was not permissible under the law; therefore, defendant's swerve to the left was negligent.

 In general, the humanitarian doctrine requires a defendant to follow his discovery of plaintiff's position of immediate danger by doing all a very careful and prudent person would do under the circumstances effectively to avoid injury to the plaintiff. This question of whether defendant has done all such person would do is generally one for determination by the trier of facts. And, of course, in the determination of this question the jury is, under our practice, limited to consideration of whether injury could have been avoided by use of the particular *means submitted.* The MAI humanitarian instructions authorize the use of these words to submit the means by which defendant could avoid the injury: "stopping, swerving, slackening his speed, sounding a warning" (see para. 4, Notes on Use, MAI 17.14) and by combinations of those acts or means in the disjunctive or conjunctive. To submit "swerving" as one means permits the jury to consider and determine not only whether injury could be avoided thereby, but, if so, the direction in which defendant, in the exercise of the highest degree of care under the circumstances, should have swerved and, if he swerved in that direction, whether he swerved sufficiently. This submission also permits the jury to determine (where defendant had swerved) whether the direction in which he swerved was the direction in which a very careful and prudent person would have swerved under the circumstances. The philosophy of MAI contemplates that such matters as the direction in which a defendant could and should have swerved and the sufficiency of his swerve are better left to proper argument to the jury. To submit "swerving to the right" as the means of avoiding injury necessarily limits the factors the parties

are entitled as a matter of substantive right to have the jury consider in determining whether defendant was negligent. The addition of the words "to the right" unfairly favors the proponent of the instruction because the jury reasonably could infer from this specification of the action defendant could have taken, that the action he did take was negligent. Whether the action defendant did take in swerving was negligent, was a question for determination by the jury, and in this case the instruction's elimination of that question invaded the jury's province. For the reasons stated, we hold that the modification was unnecessary and an impermissible deviation from the approved instruction.

The order of the trial court granting a new trial is affirmed.

DONNELLY, C. J., and MORGAN, HOLMAN and FINCH, JJ., concur.

SEILER, J., concurs in result in separate concurring opinion filed.

BARDGETT, J., dissents in separate dissenting opinion filed.

SEILER, Judge (concurring in result).

I agree with Judge Bardgett's view that it was not error to include the words "to the right" in the humanitarian instruction, but I would nevertheless affirm the action of the trial court in granting a new trial, for the final reason stated in the opinion of the court of appeals, Weier, J., as follows.

" . . . Defendant contended in his aftertrial motion and in his brief on appeal that the submission of primary negligence of excessive speed and humanitarian negligence of failing to stop were theories mutually repugnant and inconsistent under the facts of this case. Plaintiff adduced evidence to prove defendant's straight skid of 62 feet into collision with plaintiff's car. His witness testified to an estimated speed of 40 miles per hour, but no evidence was introduced as to stopping distance at this speed. Plaintiff, by deposition of defendant, introduced estimated speed of defendant at 25 miles per hour with a stopping distance of 20 feet or more, later increased by defendant at trial to about 60 feet. Primary negligence of excessive speed and humanitarian negligence of failing to stop may be made the subjects of separate instructions in the same case. But where the theories are inconsistent by reason of having to select a different set of facts upon which they are based, then the opposite is true and the submission of both is reversible error. Elliott v. Richardson, Mo.App., 28 S.W.2d 408, 410[3]; Dilallo v. Lynch, 340 Mo. 82, 101 S.W.2d 7, 10[1–6]. Here plaintiff submitted a primary negligence instruction based upon excessive speed readily demonstrated by an estimated speed of 40 miles per hour where the posted speed limit was 25 miles per hour. Further, defendant's car after application of brakes skidded straight for a distance of 62 feet into collision with plaintiff's car. He then submitted a humanitarian instruction based upon the negligent acts of failure to stop and swerve. We must assume this submission was based upon defendant's estimated speed of 25 miles per hour with defendant's estimated stopping distance ranging from 20 to as much as 60 feet, since no estimate of stopping distance was adduced for the speed of 40 miles per hour. Plaintiff was entitled to the benefit of evidence offered by defendant which tended to support his theory of the case consistent with his evidence, but he cannot claim the benefit of defendant's evidence which contradicts his own testimony and is at war with his theory of the case. Elkin v. St. Louis Public Service Co., 335 Mo. 951, 74 S.W.2d 600, 603[8]. See also Fisher v. Gunn, Mo., 270 S.W.2d 869, 873[1]. Considering the factual data of speed, distance and the straight skid of defendant's automobile, the two theories of excessive speed and the ability to swerve or stop after a realization of danger were inconsistent."

BARDGETT, Judge (dissenting).

I respectfully dissent because the inclusion of the words "to the right" in the humanitarian negligence instruction, MAI 17.15, could not, in my opinion, have legally prejudiced the defendant and because the defendant had no right to require that plaintiff submit any particular issue of negligence against him.

MAI 17.15 utilizes the words "swerving" and "swerve" in connection with submitting that concept of negligence. A motorist can swerve an automobile in one of two directions—right or left. If plaintiff used the phrase as it appears in MAI 17.15 and if plaintiff made a submissible case on both swerve to the left and swerve to the right, then the plaintiff could have argued for a verdict on either concept. The jury would thereby have been authorized under the instruction and the evidence to have found for plaintiff and against defendant on either one or both of those concepts. This is true even if the evidence also showed that defendant did swerve left, if the evidence allowed for the finding that defendant could have but did not swerve sufficiently left to avoid the collision.

By inserting the words "to the right" in MAI 17.15, the plaintiff restricted himself to that swerving concept alone and, even if plaintiff made a submissible case on a swerve to the left, the jury was foreclosed from finding against defendant on negligently failing to swerve sufficiently to the left. This restriction that plaintiff imposed upon himself operated to the legal benefit, not the detriment, of the defendant. In short, plaintiff abandoned any right to recover on the premise that defendant was negligent in failing to swerve to the left. It is a novel and, in my opinion, an incorrect legal concept to say that defendant could be prejudiced when a plaintiff abandons a theory of recovery.

If plaintiff did not make a submissible case on failure to swerve left, then plaintiff could not be permitted to argue such a theory to the jury even if the instruction merely submitted "failure to swerve" and did not, by its terms, limit the submission to swerve to the right. This is so because the party having the burden of proof cannot argue for a verdict on a theory unsupported by the evidence.

The principal opinion states that the humanitarian doctrine, in general, requires a defendant to do all that a very careful and prudent person would do under the circumstances to avoid injury to plaintiff. The opinion goes on to say that "this question of whether defendant has done all such person would do is generally one for determination by the trier of facts." I agree with the statement as to what the humanitarian doctrine, in general, consists of, but the above-quoted portion of the principal opinion is not altogether correct. The jury does not determine if defendant did *all* a person would do under the circumstances. The jury decides whether the defendant was negligent in the *particular* manner that is submitted in the instructions. In the instant case, the issue submitted was not whether the defendant exercised the highest degree of care in swerving to the left but rather whether the defendant was negligent in failing to swerve to the right. Of course, the defendant is entitled to argue the evidence and, in attempting to dissuade the jury from believing defendant was negligent in failing to swerve to the right, would undoubtedly and properly argue that the defendant did all that could be expected by swerving to the left.

Consider the case in which a plaintiff pleads humanitarian negligence on the basis of defendant's failure to slacken speed or stop and all the evidence shows that the defendant *did* slacken his speed somewhat but *did not* stop. Plaintiff submits on failure to stop. Can it be said that defendant was prejudiced by plaintiff not submitting failure to slacken? Does the defendant have a right to require plaintiff to submit failure to slacken because the evidence showed that defendant did slacken, as, in the instant case, the evidence shows the defendant did swerve left?

**512**

I believe the law to be that the plaintiff has the right to abandon issues, and to select from those which the evidence supports one or more upon which plaintiff decides to ask the jury to return a verdict in his favor. I do not believe the defendant has any right to require plaintiff to submit an issue of negligence, even though supported by the evidence, that plaintiff chooses to abandon, nor to prevent plaintiff from abandoning any issue in a negligence case.

The principal opinion speaks of "swerving" as *one* means of avoiding injury and states that the philosophy of MAI contemplates that such matters as the *direction* in which a defendant could and should have swerved and the sufficiency of the swerve are better left to proper argument to the jury. Swerving, of necessity, contemplates a direction of the swerve which has to be either right or left. A swerve to the right is as different from a swerve to the left as slackening is from stopping. A swerve, regardless of direction, requires a turn of the steering wheel. Stopping and slackening also require a common act—applying the brakes, but I doubt that the law requires that where there is sufficient evidence to submit slackening and stopping the defendant can require the plaintiff to submit slackening in order for the jury to decide if slackening was sufficient to satisfy the requirement of the highest degree of care. Consequently, I do not understand the reasoning that gives the defendant the right to require plaintiff to submit "swerving", which includes both right and left, in order that the defendant can have the jury decide whether his swerve to the left satisfied the criteria of the highest degree of care.

The principal opinion states that the use of the words "to the right" unfairly favors the proponent of the instruction because the jury reasonably could infer from the specification of the action defendant could have taken, that the action he did take was negligent. In my opinion, no such inference is reasonable. The plaintiff surely would not be permitted to utilize the instruction as a basis for arguing that the *court* was implying that the swerve to the left was negligent anymore than plaintiff could argue that an instruction submitting only negligent failure to stop permitted the inference that a defendant's conduct in slackening was negligent in a case where the defendant did slacken but plaintiff did not submit that item in the instructions.

In my opinion, the inclusion of the words "to the right" could not and did not legally prejudice defendant and, therefore, I respectfully dissent.